### HARRINGTON v. CALHOUN PROBATE JUDGE.

1. TRIAL—CONDUCT—TAMPERING WITH JURORS—DRAINS—ESTABLISHMENT.

Where, on review of proceedings to establish a drain, it appears that the jury who found that the drain was a necessity and assessed the damages, while considering their verdict and looking over the lands to be taken, "accepted entertainment of, and were repeatedly treated to cigars by, certain of the petitioners for the drain and who were interested in its construction," and while the jury were taking their dinner at one of the petitioners, a lady who was waiting on them said: "The way to a man's heart is through his stomach," and inquired whether they would want stagnant water near their homes, the proceedings must be quashed.

2. SAME—WAIVER OF IRREGULARITIES—FAILURE TO OBJECT.

Where the irregularities occurred on June 11th, the verdict was filed on the 13th, and the objections were made on the 14th, a waiver of the objections could not be inferred from failure to seasonably object, where relator's counsel did nothing to indicate his approval or his intent to waive objections, and merely maintained silence.

Error to Calhoun; North, J.   Submitted June 12, 1908. (Docket No. 86.)   Decided July 13, 1908.

Certiorari by George Harrington and others against George W. Hamm, probate judge, and Edward D. Dickinson, drain commissioner of Calhoun county, to review proceedings for the establishment of a drain.   There was judgment for respondents, and relators bring error.   Reversed, and proceedings quashed.

*Hatch & Page*, for appellants.

*Winsor & Miller*, for appellee.

CARPENTER, J.   We are called upon in this case to review proceedings for the establishment of a drain brought before the circuit court by writ of certiorari.   Various irregularities are alleged.   In our judgment we need consider but one.   It appears by the record that the jury who found that the drain was a necessity, and who also assessed damages, while considering their verdict and looking over the lands to be taken, "accepted entertainment of, and were repeatedly treated to cigars by, certain of the petitioners for the drain and who were interested in its construction," and, while said jury were taking their dinner at one of the petitioners, a lady who was waiting on said jury said: " The way to a man's heart is through his stomach," and inquired whether they would want stagnant water near their homes.   The circuit judge said:

" Such conduct would justify the setting aside of a verdict of the jury in ordinary proceedings at law, but the conditions surrounding the determination of such a matter as the proceeding in mind is quite different, and it does not seem to me that the court can say that the mere exchange of such courtesies as are indicated in this record unduly influenced the judgment of 12 men whose integrity and standing as citizens was passed upon by the relators' counsel at the time of their selection as jurors."

We cannot approve this reasoning.   While a judge or juror is determining a controversy, he should accept no

favors from a party interested therein. Such favors are usually extended for the purpose of improperly influencing his judgment, and, if he accepts them and decides in favor of the party extending them, he justly subjects himself to severe criticism. Judicial proceedings will become a mockery if such conduct is tolerated, for every suitor will be encouraged to compete in schemes of corruption. In *Detroit, etc., R. Co.* v. *Campbell*, 140 Mich. 384, a verdict in proceedings instituted by a railroad company to condemn land was set aside for just such conduct, and we said:

" Taking property by virtue of the right of eminent domain is a proceeding that ought to demand quite as careful oversight as the trial of any other case, for it deals with as important interests as any civil cause. * * * We do not know that the jurors were influenced in this case, but we are of the opinion that owners of land should not be subjected to such dangers, or be required to show affirmatively that they have suffered."

Several reasons are urged for saying that the case is not ruled by the *Campbell Case.* It is said that it was necessary for the jury to get their dinner while they were examining the route of the drain. This is doubtless true; but the slightest forethought would have provided for obtaining that dinner elsewhere than at the house of one of the petitioners and in some other manner than at his expense.

It is said that relators' counsel should have made an earlier objection to the misconduct of the jurors. The misconduct occurred on the 11th of June, when the jurors were making their view of the proposed drain. Their verdict was filed on the 13th of June. The objections were made on the 14th. They could not well have been made earlier. To sustain the contention in question, we must decide that counsel should have objected to the irregularities at the time they occurred. It might be sufficient to say that it is not to be inferred that certain of these irregularities of a serious nature were observed by counsel at the time they occurred. It is true, however, that he did

know of some of them, and perhaps it may be inferred that as to these he did not immediately protest. But it may not be inferred that he did anything which indicated his approval or his intent to waive objections. It may be presumed that he maintained a dignified silence. And this was the proper course to take for a lawyer and a gentleman. And in taking it he did all that was necessary to preserve his clients' rights. It is said that he waived his objections because he accompanied the jury when they took dinner at the house of one of the petitioners. Whether this would amount to a waiver of the particular objection, viz., the objection that the jurors accepted this entertainment, is a point which we are not called upon to determine in this case. It certainly would not amount to a waiver of other objections, viz., that the jurors received other favors from petitioners—objections which require us to vacate the verdict.

The order of the circuit court will be reversed, and the proceedings quashed.

GRANT, C. J., and BLAIR, MOORE, and MCALVAY, JJ., concurred.